Allen ANDERSON; Heather Ayres; Hillary Ayres, by her guardian ad litem Karen Ayres; Karen Ayres, et al., Plaintiffs–Appellants,

v.

UNITED STATES of America, Defendant–Appellee.

No. 93–56321.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1995.

Decided May 4, 1995.

As Amended on Denial of Rehearing June 14, 1995.

Ellen Lake, Oakland, CA, and Sean Brew, Corona & Balistreri, San Diego, CA, for plaintiffs-appellants.

Mark B. Stern, U.S. Dept. of Justice, Washington, DC, Michael A. Hirst, Asst. U.S. Atty., Sacramento, CA, for defendant-appellee.

Before: McKAY,* REINHARDT, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Allen Anderson and others (Anderson) brought this action against the United States to recover for injuries and damages which they suffered when a controlled burn in a national forest escaped and burned their properties. The district court determined that the United States could not be held liable and granted summary judgment against Anderson. We reverse.

## BACKGROUND

The United States Forest Service (USFS) and the California Department of Forestry (CDF) were engaged in a program to help prevent major forest fires by actually setting fires to chaparral in the Cleveland National Forest.[1] The fires were also set for the purpose of studying the effects of fire and rehabilitation techniques on chaparral. Both kinds of fires are called prescribed or controlled burns. In this case there is some dispute over whether the burns in question were for control or study purposes, or both, but it makes no legal difference.

On June 19, 1990, USFS and CDF employees initiated a controlled burn in furtherance of the chaparral management program. Intending to burn approximately 500 acres, the USFS, using both hand-held torches and a helicopter equipped with a torch, set fire to vegetation in the Cleveland National Forest. For the next eight days, the fire burned within its prescribed area. Some time after the eighth day, the USFS lost control of the fire. The fire escaped from the national forest and destroyed a portion of a residential neighborhood in the Bedford Canyon area, near the City of Corona, in Riverside County, California.

Anderson, who suffered damage from that fire, filed this action against the United States under the Federal Tort Claims Act. The complaint alleged that the USFS was negligent in the setting, control, and suppression of the forest fire upon its lands. Anderson sought damages of $11,500,000. The district court granted summary judgment to the United States on the theory that private persons engaged in that sort of fire-setting and control activity in California would not be liable for their negligence. Thus, it reasoned, the United States was not liable either. This appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1346. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review orders granting summary judgment de novo. See Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Whether the United States is liable under the FTCA is also reviewed de novo, as are the district court's interpretations of state law. See Doggett v. United States, 875 F.2d 684, 686 (9th Cir. 1988).

---

* Hon. Monroe G. McKay, Senior United States Circuit Judge, United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. Chaparral is "[x]erophytic vegetation characterized by low, mostly small-leaved, evergreen shrubs or small trees, which form dense, often impenetrable thickets." R. John Little & C. Eugene Jones, A Dictionary of Botany 78 (1980).

## DISCUSSION

■ The FTCA provides that the United States shall be liable for the acts or omissions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674. The Supreme Court has held that USFS firefighters may be held liable for negligent firefighting if a private individual would be held liable for similar conduct under state law. *See Rayonier Inc. v. United States,* 352 U.S. 315, 321, 77 S.Ct. 374, 377, 1 L.Ed.2d 354 (1957), *on remand, Arnhold v. United States,* 284 F.2d 326, 329–30 (9th Cir.1960) (holding USFS firefighters liable under Washington law for negligently failing to control a fire started on federal land), *cert. denied,* 368 U.S. 876, 82 S.Ct. 122, 7 L.Ed.2d 76 (1961). Therefore, what we must determine is whether a private person would be held liable in California for his negligence in setting or controlling fires upon his land. The district court answered that question in the negative, but, as we will show, the answer should have been in the affirmative.

In general, the law of California declares that "[e]very one is responsible ... for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person...." Cal.Civ.Code § 1714(a). That, of course, means that people are generally liable when they negligently injure others. If the language is a bit quaint, it is because that has been the law of California since at least 1872. The California courts have assiduously enforced that principle and only deviate from it when some powerful public policy dictates a contrary result. *See Lipson v. Superior Court,* 31 Cal.3d 362, 372–73, 182 Cal.Rptr. 629, 635–36, 644 P.2d 822 (1982).

California has not described any such public policy in the area of firesetting and fire control by private persons. On the contrary, the legislature has specifically declared that:

Any person who personally or through another wilfully, negligently, or in violation of law, sets fire to, allows fire to be set to, or allows a fire kindled or attended by him

to escape to, the property of another, whether privately or publicly owned, is liable to the owner of such property for any damages to the property caused by the fire.

Cal.Health & Safety Code § 13007. The legislature has also provided that:

Any person who allows any fire burning upon his property to escape to the property of another, whether privately or publicly owned, without exercising due diligence to control such fire, is liable to the owner of the property for the damages to the property caused by the fire.

Cal.Health & Safety Code § 13008.

The California courts have neither deviated from nor limited the reach of those statutes. They have consistently held private persons liable for negligently setting fires and for negligently allowing fires to escape to others' properties. *See People v. Southern Pac. Co.,* 139 Cal.App.3d 627, 633–34, 188 Cal.Rptr. 913, 916–17 (1983) (railroad was responsible for the damages caused when fire spread from its right-of-way to other property, even if it did not negligently set the fire); *Gould v. Madonna,* 5 Cal.App.3d 404, 406, 85 Cal.Rptr. 457, 458 (1970) (a private contractor who negligently maintained fires set for clearing sections of a United States highway on which he was working was liable for damages caused when the fire escaped and burned the plaintiff's land); *People v. Zegras,* 29 Cal.2d 67, 172 P.2d 883 (1946) (court notes that private individuals must reimburse CDF for expenses incurred in extinguishing negligently set fire that spread to other properties).

■ The acquisition of permits to conduct a controlled burn is not sufficient to shield the landowner from liability, even if a fire official is on hand to assist. In that regard, *Leuteneker v. Fisher,* 155 Cal.App.2d 33, 317 P.2d 143 (1957), is instructive. There the landowner obtained a permit for a controlled burn, and an "assistant ranger of the [California] Division of Forestry was present during the burn and took charge of the setting and control of the fires." *Id.* at 35, 317 P.2d at 144. The court said:

While a person conducting a controlled burn should ordinarily follow the directions of the state ranger, ·it is, nevertheless, within his power not to proceed if the precautions taken by the state ranger are inadequate and in that event he should discontinue the burning. He is not required to surrender to the state ranger's judgment for, as stated in *Wood & Iverson, Inc. v. Northwest Lbr. Co.*, by the Supreme Court of the State of Washington, 138 Wash. 203 [244 P. 712, 714 (1926) ]:

> "It is a mistake to say he is compelled in such a case to surrender entirely to the forester's judgment. While he is possibly required to follow the directions given by the forester, clearly it is always within his power to refuse to proceed if he thinks the forester's precautions inadequate, and within his power to take precautions in addition to those prescribed by the forester. In other words, if an owner undertakes to abate the nuisance of this sort by burning under the direction of the forester, he is an actor in the proceedings; a joint actor with the forester it may be, but liable, nevertheless, for any loss caused to a third person by a negligent performing of the burning."

*Id.* at 35–36, 317 P.2d at 144; *see also Richter v. Larabee*, 136 Cal.App. 16, 22, 27 P.2d 954, 956 (1933). The government argues that *Leuteneker* and other cases are not apposite because they involve burns for private purposes only. It is true that in *Leuteneker* the court, in a dictum, mentioned that the fire was for private rather than public purposes, but we think that is a distinction without a difference. Nothing turned on that, and it can hardly be doubted that controlled burns on private land can (and regularly do) serve a public, as well as a private, purpose. *See, e.g.,* Cal.Pub.Res.Code § 4491.[2] All of this points ineluctably to the conclusion that a private person in the position of the USFS would be liable for the negligently setting

and controlling of the fire alleged in Anderson's complaint. Thus, the government must also be liable.

The government pushes all of this aside and argues that, even so, private persons are not liable in California when they set or fight controlled burn fires on their own lands because their actions are so much like those of public agencies that they ought to have public agency immunity. That argument is interesting, almost daedalian, but it is wrong. None of its facets reflects the law of California.

■ One suggested support for the argument relies on the notion that fighting fires is an intrinsically public function. Thus, the argument goes, any analysis of what the USFS and its firefighters do must look to state official liability only. We have suggested that is a good approach in the limited area of police services because "private persons do not wield ... police powers." *Louie v. United States*, 776 F.2d 819, 825 (9th Cir.1985). That consideration is entirely inapposite here for private persons do wield firefighting powers when their own lands are involved. Indeed, they have more than the power to fight fires; they have the duty to exercise due diligence to control fires.

■ Another suggested support for the government's novel theory is derived from a line of cases which holds that private rehabilitation facilities are not liable for injuries inflicted upon others by their inmates. *See Cardenas v. Eggleston Youth Ctr.*, 193 Cal. App.3d 331, 335, 238 Cal.Rptr. 251, 253 (1987) (private rehabilitation facility is not liable for the criminal conduct of one of its residents who attacked the plaintiff); *Beauchene v. Synanon Found., Inc.*, 88 Cal.App.3d 342, 348, 151 Cal.Rptr. 796, 799 (1979) (court refuses to hold private rehabilitation institute liable for injuries caused by one of its escapees); *Vu v. Singer Co.*, 706 F.2d 1027, 1030–31 (9th Cir.) (private contractor who ran Job Corps Center is shielded from liability for the criminal actions of members of its pro-

---

**2.** Also, the government's argument would lead to the conclusion that because what it does is for a public purpose, it should be treated differently from private individuals. Congress decided otherwise when it enacted the FTCA. As the Su-

preme Court said in *Rayonier*, 352 U.S. at 319, 77 S.Ct. at 377, the imposition of liability may be " 'novel and unprecedented' " when applied to federal firefighters, but Congress has said that it is the law.

gram), *cert. denied,* 464 U.S. 938, 104 S.Ct. 350, 78 L.Ed.2d 315 (1983). The courts in those cases referred to the public policy favoring rehabilitation and, thus, did not hold the private persons liable. Therefore, the government argues, we should look to California's policy regarding public firefighters. That policy does immunize California public entities from liability for "any injury resulting from the condition of fire protection or firefighting equipment or facilities or ... any injury caused in fighting fires." Cal. Govt.Code § 850.4. Thus, reasons the government, because subjecting private persons to liability might frustrate the ultimately public purpose of controlling fires, private persons must also be immune. It follows that the United States should be.

Of course, as we have already said, private persons who have fires on their own land are not usually immune under the law of California. Beyond that, where the argument goes seriously astray is at the point where it likens control of persons in one's rehabilitation facilities to control of fires on one's lands. In that the government ignores a critical difference.

When it comes to the control of people, the background rule is that "a person owes no duty to control the conduct of another." *Beauchene,* 88 Cal.App.3d at 347, 151 Cal. Rptr. at 798. California courts have carved out an exception to that rule, "where a special relationship exists between the defendant and the injured party, or between the defendant and the active wrongdoer." *Id.* (citing *Tarasoff v. Regents of Univ. of Cal.,* 17 Cal.3d 425, 435, 131 Cal.Rptr. 14, 23, 551 P.2d 334, 343 (1976)). The *Beauchene* line of cases simply refused to extend that special relationship concept to private criminal rehabilitation facilities. As *Beauchene* said:

> [T]he same public policy that moved the Legislature to immunize *public* release and rehabilitation programs from liability—to

encourage such innovations in the interests of criminal justice—compels a conclusion that respondents' *private* release and rehabilitation programs owed no legal duty to this [plaintiff]. In light of the purpose behind the governmental immunity, it would be incongruous to hold that, while the state is immune from liability ... the program itself owed [plaintiff] a duty....

88 Cal.App.3d at 348, 151 Cal.Rptr. at 799 (emphasis in original); *see also Cardenas,* 193 Cal.App.3d at 335–36, 238 Cal.Rptr. at 253. Thus, *Beauchene* decided that the public policy against assault, which drove the special relationship cases, was overcome by the public policy favoring rehabilitation. 88 Cal.App.3d at 347–48, 151 Cal.Rptr. at 798–99. The *Beauchene* line of cases does not create a special exception by refusing to hold private rehabilitation programs liable; it merely follows the background rule that one is not usually responsible for the actions of another.

When it comes to the control of fires, on the other hand, the background rule is liability, as we have already said. Thus, were we to find an exception here we would create one where none has existed, and we would do so simply because public entities have immunity, if indeed they do.[3] We see no justification in California law for doing that.

■ The final argument for the government's position relies upon the fact that California has provided for mutual fire prevention and control agreements between the state and the United States. No doubt the state has so provided. *See* Cal.Pub.Res.Code §§ 4101–4789.7. However, we fail to see how that helps the government. A suggestion that imposition of liability will somehow deter the United States from entering into agreements because state firefighters on federal lands will have less liability than federal fire-

---

3. We need not, and do not, decide whether a California public entity would be immune under the facts of this case. We only note that the issue is not free from doubt. *See, e.g., McKay v. California,* 8 Cal.App. 4th 937, 938–40, 10 Cal. Rptr.2d 771, 771–73 (1992); *Vedder v. County of Imperial,* 36 Cal.App.3d 654, 660–61, 111 Cal. Rptr. 728, 731–32 (1974); *Osborn v. City of Whittier,* 103 Cal.App.2d 609, 620, 230 P.2d 132 (1951); *see also* Arvo Van Alstyne, *California Government Tort Liability Practice,* § 4.31, at 374–75 (1980); *but cf. Colapinto v. County of Riverside,* 230 Cal.App.3d 147, 152–53, 281 Cal. Rptr. 191, 194 (1991); *City and County of San Francisco v. Superior Court,* 160 Cal.App.3d 837, 839, 207 Cal.Rptr. 6, 7 (1984); *Heimberger v. City of Fairfield,* 44 Cal.App.3d 711, 715, 117 Cal. Rptr. 482, 484 (1975).

fighters on those lands is little more than a complaint about the FTCA itself. We hear the ululation, but, as the Supreme Court has said, the very purpose of the FTCA was to treat the United States like a private, not public, person. *See Rayonier,* 352 U.S. at 319, 77 S.Ct. at 377.

Moreover, the same provisions also encourage cooperative agreements with "any person, firm, association or corporation" for the "prevention and suppression of forest fires." Cal.Pub.Res.Code § 4141. The provisions also allow the CDF to enter into a contract for prescribed burning with a private landowner for the purpose of fire prevention, watershed management, range improvement, vegetation management, forest improvement, or wildlife habitat improvement. Cal.Pub. Res.Code § 4475. Those provisions do not, however, exempt private persons from liability. Rather, the statutes provide:

> [T]hat the department may, in its discretion, purchase a third party liability policy of insurance which provides coverage against loss resulting from a wild land fire sustained by any person or public agency, including the federal government.... The policy shall name the person contracting with the department and the department as joint policyholders.... If the department elects not to purchase insurance, the department shall agree to indemnify and hold harmless the person or public agency contracting with the department with respect to liability arising out of performance of the contract.

Cal.Pub.Res.Code § 4476(h). Were private persons (or the federal government) intended to be immune from liability, there would be no purpose in providing insurance or indemnity in the event that damages were caused to a third person.[4] On the contrary, there would be no liability in the first place, and no insurance would be needed. Thus, we find nothing in these code provisions that would militate in favor of a holding that the United States is not liable under the FTCA.[5]

## CONCLUSION

For many years, the United States has bridled at the notion that it can be held liable for negligent firesetting and firefighting activities on its lands while state entities cannot be. It has failed in its attempt to be treated like state entities. *See Rayonier,* 352 U.S. at 317–21, 77 S.Ct. at 376–78.

Now the United States invites us to hold that all landowners in California are immune because it hopes to ride those coattails to victory. We decline the invitation. California does impose liability on private landowners, when they negligently set or fail to control fires on their property and injury results to others. Thus, we cannot give substance to the eidolon that the United States continues to chase. It must answer for its negligent acts.

**REVERSED and REMANDED.**

---

4. *See also* Cal.Pub.Res.Code § 4494 (obtaining a burn permit does not relieve holder of duty of due diligence).

5. We must also disagree with the general proposition that if a negligently set or controlled fire escapes and inflicts both personal and property injuries, only the latter can be recovered. That would mean, for example, that a plaintiff who was burned when his house burned could only recover for the harm to the house. There is nothing in the law of California to suggest that Health and Safety Code §§ 13007 and 13008 so limit California Civil Code § 1714(a). On the contrary, California usually treats statutory remedies as additions to rather than deductions from plaintiffs' general protections against negligent harm. *See, e.g., Rojo v. Kliger,* 52 Cal.3d 65, 79, 276 Cal.Rptr. 130, 138, 801 P.2d 373, 381 (1990); *Orloff v. Los Angeles Turf Club,* 30 Cal.2d 110, 112–14, 180 P.2d 321, 322–24 (1947); *Hentzel v. Singer Co.,* 138 Cal.App.3d 290, 303–04, 188 Cal.Rptr. 159, 167–68 (1982); *Monroe v. East Bay Rental Serv.,* 111 Cal.App.2d 574, 575–76, 245 P.2d 9, 10 (1952); *cf.* Cal. Health & Safety Code § 13009 (recovery of cost of emergency medical services allowed). Of course, at this juncture we do not undertake to determine whether appellants can recover for the particular types of personal injuries they suffered, if any.